IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

EUSTON RICE,

                Petitioner,

                                   Civil Action No.
                                   9:04-CV-335 (LEK/DEP)

     vs.

DANIEL A. SENKOWSKI, Superintendent,

                Respondent.
_____

APPEARANCES:                          OF COUNSEL:

FOR PETITIONER:

EUSTON RICE, *Pro Se*

FOR RESPONDENT:

HON. ANDREW M. CUOMO           GERALD J. ROCK, ESQ.
Attorney General for the             Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. Magistrate Judge

<u>REPORT AND RECOMMENDATION</u>

      Petitioner Euston Rice, a New York State prison inmate as a result

of a 2002 assault conviction, has commenced this proceeding seeking

federal habeas intervention pursuant to 28 § U.S.C. 2254.  In his petition

Rice has raised two grounds for habeas relief, arguing that his conviction

was secured through the admission of evidence constituting the fruits of

an unlawful arrest and that he received ineffective assistance of counsel,

principally as a result of a conflict of interest presented by the fact that one

of his attorney's colleagues had previously represented the victim of

Rice's assault in an unrelated criminal matter.

Having carefully considered the petitioner's allegations, against the

backdrop of the governing deferential standard, I find no basis to conclude

habeas relief is warranted, and therefore recommend denial of the petition

in this matter.

I.    BACKGROUND

Petitioner's conviction stems from a series of confrontations

occurring in Albany, New York between the petitioner and the victim,

Jesse Caldwell, beginning on the evening of June 9, 2001, and extending

into the early morning hours of the following day.  Trial Transcript at 122-

28.[1]  The series of altercations between the two men appears to have

been precipitated by a woman verbally harassing the victim's eleven year

---

[1]    The trial transcript, which is among the state court records provided to
the court by respondent's counsel, will be hereinafter cited as "TT."

old step-daughter as she and the victim were returning home from a family outing.  TT 124.  Shortly after that incident, Rice appeared on the scene and pulled out a knife.  TT 124-25.  A brief fight ensued, and the two participants parted.  TT 125.  A short time later, the two again became embroiled in an argument, which ripened into a fight involving physical aggression on the part of both participants.  TT 127-28.  As a result of the fight Caldwell was treated at a local hospital for various stab wounds to his face, including a laceration to the left eyeball which left him permanently blind in that eye.  TT 128-31, 133.

During the police investigation which followed, both Caldwell and a witness to the fight identified the petitioner from a photographic array as the other participant.  Suppression Hearing Transcript at 5-11.[2]  The detective investigating the incident informed a fellow officer that he desired to speak with the petitioner.  TT 193.  That second officer, who was acquainted with Rice, went to the petitioner's apartment on July 1, 2001 and advised him that the detective investigating the incident wished to speak with him.  TT 192-93.  In response, Rice spontaneously stated that he "always carr[ied] a knife for [his] own protection."  TT 195, 197.  Rice

---

[2]      The suppression hearing transcript, which is among the state court records provided to the court by respondent's counsel, will be hereinafter cited as "ST."

3

was subsequently handcuffed and transported to the police station where, after having been advised of his Miranda[3] rights, he provided a statement to the investigating officer acknowledging his involvement in a fight with Caldwell, but denying responsibility for the victim's stab wounds.  TT 199-201.

II.   PROCEDURAL HISTORY

    A.   State Court Proceedings

    On July 6, 2001, petitioner was indicted by a grand jury and charged with assault in the first degree.  Indictment No. 6-6972 (Appellant's Appendix at A3).  On December 3, 2001, prior to impanelment of a petit jury, the trial court conducted a suppression hearing to address the issue of whether petitioner's arrest was lawful, and whether his statements should be suppressed.  ST 2.  After initially reserving decision, the trial court ultimately found petitioner's statement to Officer Leonard regarding possession of a knife to have been spontaneous and, noting that he was not in custody at the time the statement was made, concluded that it could be admitted into evidence.  TT 78-79.  The court also concluded that petitioner was formally placed under arrest prior to having been

─────────────────────

    [3]     *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

4

transported to the police station, and that the police officer had probable cause to make that arrest based upon the "fellow officer rule."[4]  TT 79-80, 83.

A jury trial was conducted in New York State Supreme Court, Albany County, beginning on January 28, 2002, to address the charge lodged against Rice.  TT 4.  At the outset of that trial, the court addressed with petitioner a potential conflict of interest presented by virtue of the fact that an attorney employed by the Albany County Public Defender, with whom Rice's trial counsel was affiliated, had previously represented Caldwell, the victim of Rice's alleged assault, on a different matter and that while not actively in litigation, the matter technically remained open as a result of Caldwell's failure to pay a court-imposed fine.  TT 4-5.  During the ensuing colloquy petitioner's counsel stated that he had never personally represented Caldwell.  TT 6-7.  Following a thorough discussion of the issue Rice advised the court that he wished to continue being represented by his Albany County Public Defender.  TT 4-7.

---

[4]    Under that rule, an arresting officer lacking personal knowledge sufficient to establish probable cause may nonetheless make a lawful arrest if acting upon the direction of or as a result of communications with a superior or fellow officer, or another police department, provided that at the time of arrest law enforcement, as a whole, collectively possessed sufficient information to constitute probable cause for that arrest.  *See People v. Ramirez-Portoreal*, 88 N.Y.2d 99, 113, 643 N.Y.S.2d 502, 510 (1996).

At the close of trial, during which the victim, the petitioner, and several other witnesses testified, petitioner was found guilty of assault in the first degree. TT 398. Petitioner was thereafter sentenced on March 26, 2002 to a determinate period of incarceration of fourteen years. Sentencing Minutes (Appellant's Appendix at A214-15).

Rice appealed his conviction to the New York State Supreme Court Appellate Division, Third Department. In that appeal, *inter alia*, petitioner pressed arguments regarding the voluntariness of the statement made at his residence, the lawfulness of his arrest, and the ineffectiveness of representation which he received from his counsel, additionally arguing that his conviction was against the weight of the evidence. On October 30, 2003 a five-judge panel of the Third Department issued a decision unanimously affirming petitioner's conviction. *People v. Rice*, 309 A.D.2d 1078, 766 N.Y.S.2d 444 (3d Dep't 2003). While in its decision the Third Department rejected petitioner's claims regarding the voluntariness of his statement, ineffective assistance of counsel, and weight of the evidence, it concluded that law enforcement officials lacked probable cause to place him under arrest, and thus held that a Fourth Amendment violation had occurred. 309 A.D.2d at 1080, 766 N.Y.S.2d at 447. The court

nonetheless found that the trial court's error in admitting into evidence

Rice's post-arrest statement was harmless in light of the fact that prior to

his arrest petitioner had already admitted to possession of a knife at the

relevant time, and in view of the otherwise overwhelming evidence

regarding his fight with Caldwell.  *Id*.  Petitioner's application for leave to

appeal to the New York Court of Appeals was denied on February 4, 2005.

*People v. Rice*, 1 N.Y.3d 633, 777 N.Y.S.2d 31 (2004).

In or about April of 2006, after commencing this proceeding,

petitioner filed an application in state court seeking an order vacating his

conviction pursuant to N.Y. Criminal Procedure Law § 440.10.  The sole

argument raised in petitioner's section 440.10 application was the

ineffectiveness of his trial counsel's representation.  By decision and order

issued on September 26, 2006 by the Honorable Dan Lamont, Acting

Supreme Court Justice, petitioner's motion for collateral relief was denied.

*See People v. Rice*, No. 584-01 (Albany County Ct. Sept. 26, 2006)

("September, 2006 Decision").  Petitioner's application to the Third

Department for leave to appeal the section 440.10 ruling to that court was

denied on November 16, 2006.

B.    This Proceeding

Petitioner commenced this proceeding on March 26, 2004.  Dkt. No.

1.  In his petition Rice raises two arguments, asserting initially that his

conviction was the product of a Fourth Amendment violation, based upon

the fact that his arrest was unlawful, and further that he received

ineffective assistance of counsel in the course of the criminal proceedings

against him.  *Id*.  Appropriately named as the respondent in Rice's petition

is Daniel A. Senkowski, the superintendent of the facility in which he was

incarcerated at the time of filing.  *Id*.

On June 4, 2004 Superintendent Senkowski, represented by the

office of the New York State Attorney General, responded to Rice's

petition through the filing of an answer and a separate memorandum

opposing his request for relief.  Dkt. No. 7.  Petitioner has since responded

with the filing of a reply, or " traverse" on July 16, 2004.[5]  Dkt. No. 9.

Rice's petition, which is now ripe for determination, has been referred to

me for the issuance of a report and recommendation, pursuant to 28

U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

---

[5]      On April 10, 2006 I issued an order staying this case indefinitely in order
to permit Rice to pursue state court remedies which potentially remained available to
him.  Dkt. No. 12.  That stay was subsequently lifted on January 22, 2007.  Dkt. No. 17.

72.3(c).  See also Fed.R.Civ.P. 72(b).

III.    DISCUSSION

    A.    Standard of Review

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), brought about significant new limitations on the power of a federal court to grant habeas relief to a state court prisoner under 28 U.S.C. § 2254.[6]  Under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir. 2001) (quoting § 2254(e)(1)) (internal quotes omitted).  Significantly, a federal court may not grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> 1) resulted in a decision that was contrary to, or involved an

---

[6]    These new standards apply to petitions filed after the Act's effective date even though they relate to convictions which predate enactment of the AEDPA. *Williams v. Taylor*, 529 U.S. 362, 402, 120 S. Ct. 1495, 1518 (2000); *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir. 2001) (citing *Williams*).

> unreasonable application of, clearly
> established Federal law, as determined
> by the Supreme Court of the United
> States; or
>
> 2) resulted in a decision that was based
> on an unreasonable determination of
> the facts in light of the evidence
> presented in the State court
> proceeding.

28 U.S.C. § 2254(d); *see also Thibodeau v. Portuondo*, 486 F.3d 61, 65

(2d Cir. 2007); *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir.), *cert. denied,* 534

U.S. 886, 122 S. Ct. 197 (2001); *Boyette*, 246 F.3d at 88.  When applying

this test, the Second Circuit has noted that

> [u]nder AEDPA, we ask three questions
> to determine whether a federal court
> may grant habeas relief: 1) Was the
> principle of Supreme Court case law
> relied upon in the habeas petition
> "clearly established" when the state
> court ruled? 2) If so, was the state
> court's decision "contrary to" that
> established Supreme Court precedent?
> 3) If not, did the state court's decision
> constitute an "unreasonable
> application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v.*

*Taylor,* 529 U.S. 362, 120 S. Ct. 1495 (2000) and *Francis S. v. Stone*, 221

F.3d 100, 108-09 (2d Cir. 2000)).

10

Because the AEDPA's restriction on federal habeas power was premised in no small part upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's exacting review standards apply only to federal claims which have been actually adjudicated on the merits in the state court. *Washington v. Shriver,* 255 F.3d 45, 52-55 (2d Cir. 2001). Specifically, as the Second Circuit explained in *Sellan v. Kuhlman*, "[f]or the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." 261 F.3d 303, 312 (2001); *see Jimenez v. Walker,* 458 F.3d 130, 135 (2d Cir. 2006) (citing *Sellan*), *cert. denied sub. nom., Jimenez v. Graham*,127 S. Ct. 976 (2007). Significantly, the Second Circuit further held that when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – *even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." Sellan,* 261 F.3d at 312. (emphasis added).[7,8]

---

[7]    In the past, when wrestling with interpretation and application of the AEDPA's deference standard the Second Circuit had suggested, although leaving

When a state court's decision is found to have been decided "on the merits", that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 120 S. Ct. at 1523. Moreover, a federal court engaged in habeas review must also determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable." *Sellan*, 261 F.3d at 315 (quoting *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521 (O'Connor, J.)). The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not be great[.]" *Francis S.,* 221 F.3d at 111.

---

open the question, that deference under section 2254(d) is not mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim in a manner adequate to justify deference under the AEDPA, in which case pre-AEDPA standards would apply. *Washington*, 255 F.3d at 52-55; *see also Noble*, 246 F.3d at 98. That court clarified in *Sellan*, however, that the question of whether or not a state court makes specific reference to a constitutional principle is not controlling.

[8]     In his opinion in *Sellan*, Chief Judge Walker acknowledged that enlightenment in state court decisions as to the manner of disposition of federal claims presented would greatly enhance a federal court's ability, on petition for habeas review, to apply the AEDPA deference standard. *Sellan*, 261 F.3d at 312. He noted, however, that a state court's failure to provide such useful guidance does not obviate a federal court's duty to make the analysis and pay appropriate deference if the federal claim was adjudicated on the merits, albeit tacitly so. *Id.*

B.    Fourth Amendment Claim

In his first ground, petitioner asserts that his Fourth Amendment rights were violated when he was arrested without probable cause, and that as a result the statement made following his arrest should have been suppressed at trial.  This claim was litigated in the state courts with partial success, the Third Department concluding that the trial court had erred in finding that petitioner's arrest was lawful, and accordingly holding that his statements made at the police station, although not the spontaneous statement made in his residence regarding possession of a knife, should have been suppressed.  *See Rice*, 309 A.D. 2d at 1080, 766 N.Y.S. 2d at 447.  The state appellate court went onto conclude, however, that the error was harmless beyond a reasonable doubt in view of the overwhelming evidence otherwise implicating the petitioner in the crime for which he was convicted.  *Id*.

Petitioner's Fourth Amendment argument must be considered against the backdrop of the well-established body of habeas jurisprudence providing that where a state has provided a defendant with the opportunity to fully and fairly litigate a Fourth Amendment claim, such a constitutional claim may not be considered by a federal court on petition for habeas

relief.  *See Stone v. Powell*, 428 U.S. 465, 481-82, 96 S. Ct. 3037, 3046
(1976); *Hernandez v. Filion*, No. 05 Civ. 4046, 2005 WL 3164063, at *5-6
(S.D.N.Y. Nov. 29, 2005); *see also Cappellan v. Riley*, 975 F.2d 67, 70 (2d
Cir. 1992); *Campbell v. Greene,* 440 F. Supp. 2d 125, 138 (N.D.N.Y.
2006) (McCurn, J.).  A federal court may only review a claim based upon
the Fourth Amendment "(a) if the state has provided no corrective
procedures at all to redress the alleged fourth amendment violations; or
(b) if the state has provided a corrective mechanism, but the defendant
was precluded from using that mechanism because of an unconscionable
breakdown in the underlying process." *Capellan,* 975 F.2d at 70 (citing
*Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir. 1977)); *Campbell*, 440 F.
Supp. 2d at 138 (citing *Capellan*).

By statute, New York provides a procedure for adjudication of
claimed Fourth Amendment violations.  *See* N.Y. Crim. Proc. Law §
710.10 *et seq.*  "[F]ederal courts have approved New York's procedure for
litigating the Fourth Amendment claims . . . as being facially adequate."
*Cappellan*, 975 F.2d at 70 n.1; *see also Jackson v. Lacy*, 74 F. Supp. 2d
173, 176 (N.D.N.Y. 1999) (McAvoy, C.J.) (adopting Report-
Recommendation of Magistrate Judge Ralph W. Smith, Jr.).  "[O]nce it is

established that a petitioner has had an opportunity to litigate his or her

Fourth Amendment claim (whether or not he or she took advantage of the

state's procedure), the court's denial of the claim is a conclusive

determination that the claim will never present a valid basis for federal

habeas relief." *Graham v. Costello,* 299 F.3d 129, 134 (2d Cir. 2002).  It

should be noted, moreover, that "mere disagreement with the outcome of

a state court ruling is not the equivalent of an unconscionable breakdown

in the state's corrective process."  *Capellan*, 975 F.2d at 72.

In this case there is no evidence that the trial court failed to conduct

a meaningful suppression hearing and conscientiously address petitioner's

Fourth Amendment claim; to the contrary, the record of proceedings held

on December 3, 2001 reveals that the trial court conducted a thorough

hearing and, after affording the petitioner the right to present evidence –

an opportunity of which he did not avail himself – made detailed findings of

fact and conclusions of law addressing the arguments now raised by the

petitioner.  ST 50-67.  Petitioner's claim for relief based upon an alleged

Fourth Amendment violation therefore is legally deficient.  *See Campbell*,

440 F. Supp. 2d at 139-40 (citing, *inter alia*, *Morales v. Walsh*, No. 02-CV-

6045, 2003 WL 23185770, at *15 (E.D.N.Y. Oct. 30, 2003) (denying

Fourth Amendment claims, including claim of unlawful arrest, under *Stone*)) (other citations omitted).

Even if the court were to entertain this ground of Rice's petition, it would have to do so in the context of the Appellate Division's finding that although error was committed, it was harmless beyond a reasonable doubt.  When evaluating convictions on collateral habeas challenges alleging error on the part of a trial court, habeas courts historically have inquired whether the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *DeVivo v. Superintendent, Auburn Corr. Facility*, No. 02-CV-0840, 2006 WL 581145, at *18 (N.D.N.Y. March 8, 2006) (Kahn, D.J. and Peebles, M.J.) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)) (other citation omitted). Following the enactment of the AEDPA, however, it became an "open question" in the Second Circuit whether the applicable test on federal habeas review of a state trial court error remains the more generaous standard articulated in *Brecht*, or instead requires an analysis of whether the state court's decision was contrary to, or an unreasonable application of *Chapman v. California*, 386 U.S. 18 (1967).[9]  *DeVivo*, 2006 WL 581145,

---

[9]      In *Chapman*, the Supreme Court articulated that "before a federal constitutional error can be held harmless, the court must be able to declare a belief

at *18 (citing *Benn v. Greiner*, 402 F.2d 100, 105 (2d Cir. 2005) (citation

omitted)); *see also Brinson v. Walker*, 407 F. Supp. 2d 456, 480-81

(W.D.N.Y. 2006); *Moore v. Herbert*, No. 02 CV 0999, 2005 WL 3591815,

at *3-4 (N.D.N.Y. Dec. 30, 2005) (Mordue, D.J.).

The Supreme Court's recent decision in *Fry v. Pliler*, __ U.S. __, 127

S. Ct. 2321 (2007), provides helpful and long-awaited guidance regarding

this constitutional question.  In *Fry*, the Supreme Court undertook

*certiorari* review of the issue specifically to resolve a split among the

circuits regarding "whether *Brecht* or *Chapman* provides the appropriate

standard of review when constitutional error in a state-court trial is first

recognized by a federal court."  *Fry*, 127 S. Ct. at 2327.  Addressing the

issue, the *Fry* Court held that

> in § 2254 proceedings a court must assess the
> prejudicial impact of constitutional error in a state-
> court criminal trial under the "substantial and
> injurious effect" standard set forth in *Brecht*, 507
> U.S. 619, *whether or not the state appellate court
> recognized the error and reviewed it for
> harmlessness* under the "harmless beyond a
> reasonable doubt" standard set forth in *Chapman*,
> 386 U.S. 18.

*Id.* (emphasis added).  It should be noted that the majority in *Fry* assumed,

---

that it was harmless beyond a reasonable doubt."  *Chapman*, 386 U.S. at 24, 87 S.Ct.
at 828.

without deciding, that the trial court had committed constitutional error in excluding the testimony of a defense witness at the petitioner's trial, accepting the habeas court's finding in that regard. *Id.* at *3 n.1. Accordingly, whether the holding in *Fry*, and therefore use of the *Brecht* standard, is applicable in cases where no error of constitutional proportion is found to have been committed by the trial court remains to be determined.[10]

Having reviewed the record in this matter and concluded that the evidence of petitioner's guilt is overwhelming, particularly in light of his admission to having been involved in an altercation with the victim, I am unable to conclude that the trial court's error regarding petitioner's unlawful arrest, recognized as harmless by the Third Department, had a substantial and injurious effect or influence in determining the jury's verdict.

---

[10]   Indeed, while concurring in the applicability of *Brecht* as the proper standard of review, Justice Breyer suggested remanding the case to determine whether constitutional error existed in the first place, noting the interplay between the issue of whether a constitutional error occurred during the trial and its impact for purposes of assessing harmless error *vel non*. *Fry*, 127 S. Ct. at 2330-31 (Breyer, J., concurring in part and dissenting in part). The majority countered that the questions presented in the controlling *certiorari* petition did not address such "tangential and factbound questions" as to whether constitutional error in fact existed, but instead limited review to whether *Chapman* or *Brecht* provides the governing standard. *Id.* at 2328 (Scalia, J.).

C.    Ineffective Assistance of Counsel

In his second ground, petitioner asserts that he received constitutionally deficient representation from his counsel at trial.  This argument is based principally upon the inherent conflict of interest allegedly presented by virtue of the fact that other attorneys within the Albany County Public Defender's office represented the victim of petitioner's assault, albeit in connection with an unrelated matter. Petitioner attributes his attorney's failure to vigorously cross-examine the victim and to raise other potentially meritorious arguments on his behalf to the lack of loyalty exhibited by his counsel because of that conflict.

1.    Clearly Established Supreme Court Precedent

Under the well-established standard governing such claims, in order to prevail on an ineffective assistance of counsel claim a petitioner must show both that 1) his or her counsel's performance was deficient, in that it failed to conform to an objective, reasonableness threshold minimum level, and 2) that deficiency caused actual prejudice to the defense, in that the petitioner was effectively deprived of a fair trial, the results of which were reliable. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052,2064 (1984); *Murden v. Artuz*, __ F.3d __, 2007 WL 2282658, at *14

(2d Cir. Aug. 10, 2007); *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir.

2005), *cert. denied,* 126 S. Ct. 1363 (2006).  To be constitutionally

deficient, the attorney's conduct must fall "outside the wide range of

professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.

Ct. at 2066; *Greiner*, 417 F.3d at 319 (citing *Strickland).*  An attorney's

performance is judged against this standard in light of the totality of the

circumstances and from the perspective of counsel at the time of trial, with

every effort being made to "eliminate the distorting effects of hindsight[.]"

*Strickland*, 466 U.S. at 689,104 S. Ct. at 2065; *Greiner,* 417 F.3d at 619

(citing Strickland).

When reviewing an attorney's performance against this backdrop, a

court will generally indulge in a presumption that constitutionally adequate

assistance has been rendered, and significant decisions have been made

through the exercise of sound professional judgment to which "a heavy

measure of deference" is afforded. *Strickland,* 466 U.S. at 691, 104 S. Ct.

at 2066; *Greiner,* 417 F.3d at 319 (citing *Strickland).*  In a case such as

this, a petitioner must establish that his or her attorney omitted significant

and obvious issues while pursuing issues that were clearly and

significantly weaker; it is not enough to show only that counsel omitted a

nonfrivolous argument, as an attorney has no duty to advance every such argument. *Jones v. Barnes,* 463 U.S. 745,754, 103 S. Ct. 3308, 3314 (1983); *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.) (citing *Jones*), *cert. denied,* 513 U.S. 820, 115 S. Ct. 81 (1994).

Addressing the second prong of the *Strickland* test, courts have generally held that prejudice is established by showing that there is a "reasonable probability" that but for the deficiency "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068; *Henry v. Poole,* 409 F.3d 48, 63-64 (2d Cir. 2005); *Reed v. Smith,* No. 05-CV-3969, 2006 WL 929376, at *6 (E.D.N.Y. Apr. 11, 2006).

A defendant's Sixth Amendment right to counsel further guarantees the right to conflict-free representation. *See Wood v. Georgia*, 450 U.S. 261, 271 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."); *Cuyler v. Sullivan*, 446 U.S. 335, 345 (1980). When an ineffective assistance of counsel claim is predicated upon an alleged conflict of interest, the petitioner must demonstrate either (1) a *per se* conflict;[11] (2) an actual conflict that adversely affected a

---

[11]     A *per se* conflict of interest exists in only two limited circumstances, and requires automatic reversal of a conviction without a showing of prejudice: (1) where

lawyer's performance; or (3) a potential conflict of interest that results in prejudice. *See Sullivan* , 446 U.S. at 349-50, 100 S. Ct. at 1719 (1980); *see also Armienti v. United States*, 313 F.3d 807, 810 (2d Cir. 2002).[12] Proof of merely "the possibility of conflict is insufficient to impugn a criminal conviction." *Sullivan*, 446 U.S. at 350, 100 S. Ct. at 1719; *see also Osbourne v. Cummings*, No. 85-CV-692, 1988 U.S. Dist. Lexis 13187, at *7 (N.D.N.Y. Nov. 22, 1988) (McAvoy, J.) (quoting *Sullivan*).

A potential conflict of interest will exist if "'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003) (quoting *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998)). While the line between an actual and a potential conflict of interest is not always apparent, *see United States v. Cruz*, 982 F. Supp. 946, 948 n.6 (S.D.N.Y. 1997), "'[a]n attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material

---

trial counsel is not authorized to practice law or (2) where counsel is implicated in the crime for which his client is on trial. *Armienti*, 234 F.3d at 823. Neither of these circumstances is present in the instant case.

[12]     Whether a conflict of interest exists is a mixed question of law and fact. *See Sullivan,* 446 U.S. at 342; *see also United States v. Feyrer*, 333 F.3d 110, 115-16 (2d Cir. 2003).

factual or legal issue or to a course of action.'"  *Id.* (quoting *United States*

*v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002)).

>        The Second Circuit has observed that

> [i]n most cases when a defendant is faced with a
> situation in which his attorney has an actual or
> potential conflict of interest, it is possible for him to
> waive his right to conflict-free counsel in order to
> retain the attorney of his choice.  Where an actual
> or potential conflict has been validly waived, the
> waiver cannot be defeated simply because the
> conflict subsequently affects counsel's
> performance; such a result would eviscerate the
> very purpose of obtaining the waiver.

*Schwarz*, 283 F.3d at 95 (citing, *inter alia*, *Kliti*, 156 F.3d at 153).  The

Second Circuit has established a model procedure for trial courts to follow

in order to secure a knowing and intelligent waiver from a criminal

defendant, indicating that when confronted with an actual or potential

conflict a trial court should

> (i) advise the defendant of the dangers arising from
> the particular conflict; (ii) determine through
> questions that are likely to be answered in
> narrative form where the defendant understands
> those risks and freely chooses to run them; (iii)
> give the defendant time to digest and contemplate
> the risks after encouraging him or her to seek
> advice from independent counsel.

*Williams v. Meachum*, 948 F.2d 863, 867 (2d Cir. 1991) (citing, *inter alia*,

*United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982)).  The circuit, however, is less concerned with the precise words conveyed by the trial judge to the defendant than that "the facts and circumstances of the case indicate that the defendant fully appreciated his situation and made a properly informed decision."  *Id.*  (acknowledging that the state trial court failed to follow the *Curcio* rubric, but finding waiver nonetheless in light of the petitioner's clear waiver of his attorney's office's representation of a look-alike suspect on unrelated charges, thereby precluding his attorney from arguing the theory that the look-alike committed the crime as opposed to the petitioner).  While the Second Circuit has held that only in a "very narrow category of cases"  are conflicts waivable, "lesser conflicts, such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." *Perez*, 325 F.3d at 126-27.

> 2.   <u>Contrary to or an Unreasonable Application of Controlling Precedent</u>

In ruling upon petitioner's direct appeal the Third Department considered but rejected petitioner's ineffective assistance of counsel argument.  *Rice,* 309 A.D.2d at 1080, 766 N.Y.S.2d at 447.  In doing so the court found it significant that the trial court "fully discussed the situation

on the record with defendant and the attorneys, and defendant consented

to the continued representation." *Id.*  The resulting finding that plaintiff

was not the victim of ineffective assistance of counsel is thus subject to

review under the AEDPA's deferential standard.[13]

In this instance petitioner does not appear to have alleged the

existence of either a *per se* conflict or an actual conflict.  Instead, his focus

appears to be on the potential conflict presented as a result of

representation by other attorneys within his counsel's public defender

office of the victim on unrelated matters.  Petitioner also argues that the

court failed to secure a proper waiver of the alleged conflict.  Petitioner's

Reply (Dkt. No. 9) at 10 (unnumbered).  The record reveals, however, that

the trial court "fully discussed the situation" on the record with the

---

[13]     The interplay between the well-accepted standard for judging an attorney's performance under the Sixth Amendment and the prevailing test under New York law, particularly with respect to the prejudice prong of the controlling analysis, is an issue which has received increasing attention, with recent federal decisions reflecting some degree of tension between the two points of view. See, *e.g.*, *Henry v. Poole*, 409 F.3d 48 (2d Cir. 2005), *cert. denied*, 546 U.S. 1040, 126 S. Ct. 1622 (2006). Prior to rendering its decision in *Henry*, the Second Circuit had previously held that the "meaningful representation" test applied by the New York courts is not "contrary to" the governing federal standards, for purposes of the AEDPA, even though the prejudice prong of its analysis is significantly less reaching than under its federal counterpart. *See*, *e.g.*, *Lindstadt v. Keane*, 239 F.3d 191, 198 (2d Cir. 2001) (citing *Loliscio v. Goord*, 263 F.3d 178, 192-93 (2d Cir. 2001) and *Eze v. Senkowski*, *321* F.3d 110, 122-24 (2d Cir. 2003).  Whether that viewpoint will stand the test of time, particularly in light of the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495 (2000), is subject to some doubt.  *See Henry*, 409 F.3d at 68-72.

petitioner, and that following that discussion Rice waived any potential conflict arising from those circumstances and consented to the continuing representation.  TT 4-7; *see also Rice,* 309 A.D.2d at 1080, 766 N.Y.S.2d at 447.  Petitioner's counsel, it should be noted, advised the court during that colloquy that he had never represented Caldwell.  TT 5; *Rice*, 309 A.D.2d at 1080, 766 N.Y.S.2d at 447.  It is clear that petitioner fully understood the situation and made a properly informed decision to proceed with representation by his counsel.  *See Williams*, 948 F.2d at 867.

Petitioner further complains that as a result of the alleged conflict, his counsel failed to impeach Caldwell regarding his past criminal history and his allegedly inconsistent grand jury testimony.  Petitioner's Reply (Dkt. No. 9) at 9 (unnumbered).  The record demonstrates, however, that the jury was well-aware of Caldwell's prior criminal history as elicited by the prosecution during direct examination.  TT 131-33.  The record further establishes that petitioner's counsel engaged in a zealous defense of petitioner, including rigorously cross-examining Caldwell and highlighting inconsistencies in his testimony.[14]  TT 137-60.

---

[14]     In his decision denying petitioner's section 440.10 application, Acting Supreme Court Justice Lamont, who presided over the petitioner's trial, recorded his

The Supreme Court has noted that the mere "possibility of conflict is insufficient to impugn a criminal conviction." *Sullivan*, 446 U.S. at 350, 100 S.Ct. 1719.  In this instance, even assuming the existence of a potential conflict and the lack of any meaningful waiver of that conflict, petitioner has failed to establish any prejudice resulting from the potential conflict.  Accordingly, the state courts' determination regarding this issue was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

The first ground of Rice's petition, asserting a Fourth Amendment violation, is unavailing based upon the fact that he was afforded, and in fact took full advantage of, an opportunity to air that issue in the state courts.  In any event, the state courts' conclusion that any Fourth Amendment error committed through the admission of statements made by the petitioner following his arrest was harmless beyond a reasonable doubt is well-supported, and the error did not have a substantial and injurious effect on the verdict in this case.  Turning to petitioner's second

---

observation that Rice's counsel "effectively cross-examined witnesses - bringing out some of the inconsistencies in the proof; made appropriate trial objections and motions; and made competent opening and closing statements."  September, 2006 Decision at 3.

ground, I note that the effectiveness of assistance which he received from counsel at trial was an issue carefully explored by the state courts, whose determination similarly was neither contrary to nor an unreasonable application of the clearly established standard which governs ineffective assistance of counsel constitutional claims.  It is therefore hereby

RECOMMENDED, that the petition in this matter (Dkt. No. 1) be DENIED and DISMISSED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      August 27, 2007
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge